Very good. Thank you, Your Honor. Sean Seleg for the petitioner Gabriela Vasquez-Perez. I'd like to reserve four minutes for rebuttal, please. Okay. With the Court's permission. This morning, there's an abundance of issues here. I'm going to focus on three subject to the Court's questions, the first being the Shepard documents issue, the second being the new Lorenzo decision from another panel, and the third being that the en banc decision in Martinez-Lopez is distinguishable. Do we need to hold this for Lorenzo? What's your view on that? No, I don't think so, Your Honor, because if you reverse, because there was insufficient – there was no evidence to support the BIA's conclusion that there was a conviction because there were no Shepard documents, and you remand it, whatever happens to Lorenzo can be applied then. So if the government's – the government has filed only a petition for panel rehearing, as I understand it, not en banc. So if the panel rehears it and has a new decision, that can be applied on remand. But I would leave it to your discretion. One of the things that I have considered at every juncture of this case is the fact that my client is in detention, and so there is a tension between obtaining perfection and the outcome in her case at this level versus moving the case along. She's been in detention. I'm sorry. She's in detention. Detention. She's been detained for about three years. So my preference would be to have a – I'm sorry, Your Honor. Go ahead, please. So if we send it back because – and don't wait for Lorenzo. Well, if we don't wait for Lorenzo right now, I'd just like for you to give me the path – what are the options here. We – it goes back to the BIA to make a determination on whether or not, based on the Shepard documents, the case can be made. I'm not quite sure by whom. I think we have a burden of issue on who has the burden of establishing, you know, that she either was not removable or that she was removable. Well, yes. So I candidly think it's unclear, and that issue really isn't in front of the court today because it's, in a way, hypothetical about what will happen. But let me share my views with you to the extent they're helpful. The regulation that shifts the burden of proof says it's only when there is evidence that a ground for ineligibility for relief for removal may apply. That's not the case here because under this Court's ruling in Young v. Holder, among others, the Shepard documents rule applies equally to eligibility for relief from removal as to removal itself. That means there is no evidence in this record. Therefore, the burden didn't shift. So how do you know? Because they can't use her admission or whatever other unidentified document that that was referred to. That's correct. But she did plead guilty, right? Well, Your Honor, that's — I mean, she admitted to a conviction for methamphetamine in December of 2015. In an immigration proceeding. Correct. In this context, that's not — it cannot be considered evidence. It's not a Shepard document. And that's only because, at this point, as I understand it, what you're really telling us is that we don't know what the Petitioner's statute of conviction is. If any. If any. I mean, candidly, I have searched public court records and have not been able to find it. And one of the reasons the alien's admission can't be used is she may not understand what happened. She may be describing what was alleged and not perhaps what was resolved by a plea bargain with a different charge, whatever. We don't know. And it really takes a legal analysis that only the court can do based on conviction documents. And that's what the Shepard cases say over and over. Did anybody ever exhaust the issue of whether the government had presented sufficient evidence of the conviction? It wasn't — she didn't argue that, but the BIA addressed it. And I looked at this carefully. It wasn't raised by the government. As long as the BIA addresses the issue, it is preserved for appeal to this Court. So has she been in detention over this the whole time, or is she in detention over something else? She's in immigration detention, so she's in immigration detention over this case, Your Honor. So — and her only — she's asking for cancellation of removal, right? Yes. And, I mean, essentially she got pre-admitted on this based on her conviction. But it's still — she's — her only hope is for a discretionary relief? That's correct. And so in order to — does she — is there any indication that she's going to otherwise qualify for any of that? Because she still has to be a person, what, of good moral character and has to establish that she's been here continuously. There's all sorts of stuff, right? Right. And she has children. I think it's not — She has three children. Yes.  Which is important for that analysis, as I understand it. I think it's — But she's not taking care of them now. So how do we show that they would be — what's happened? What's — I don't know. I think it's not before the Court, Your Honor. I think that's something that she has to be given the opportunity to prepare that record on remand. Well — They could have mediate. Is there — they're not interested in giving your client relief, it doesn't seem like. Sometimes they mediate these things or they — Well, she wasn't allowed to present her case, Your Honor. So the judge — the procedural posture here is a little bit interesting and it's important to keep in mind that the I.J., as is his obligation with an unrepresented respondent, was sort of doing a screening process for issues. And with regard to cancellation of removal, he stopped as soon as he concluded based on the hearsay statement from the government attorney that she had a conviction. So the — all the circumstances that would go into that weren't vetted. So I don't — candidly — frankly, I don't think it's fair to say that the I.J. wouldn't be inclined to grant relief. But she hasn't been taking care of her kids for three years. But for cancellation, you have to — she'd have to — those are her qualifying relatives, right? That would be my understanding, yes. But I — it's not something I have fully investigated and I can't present to the court. Let me go at this a little bit differently. This is a cancellation of removal case, you've admitted. It seems to me that an admission of a conviction of a controlled substance offense is enough to end a cancellation of removal case. Well, not under this Court's rulings and the Supreme Court's rulings, Your Honor. Under what? Under Young v. Holder, which is an en banc decision, the Shepard rule applies to eligibility for relief from removal, which means convictions may be shown only through the Shepard documents, only through court conviction documents, not through an alien's — not through the respondent's admission, not through any other evidence for that matter. In fact, it was almost directly on point to this case, the Young case, wasn't it? I mean, a reliance on petitioners. Are you talking S. Young? There's two cases, Your Honor. So actually, this issue was discussed in the government's brief on reply, so I didn't have a written response. And in preparing for argument, I noticed that Young v. Holder, not the Young case, Y-O-N-G. Not the S. Young case. Young v. Holder. Because the S. Young case is about removal, not cancellation of removal.  That's the en banc decision from 2012. It specifically, among its, I think, four holdings, says that the Shepard rule applies to relief from removal. And I have a quote for you from page 985. Extraneous evidence, such as police reports or alien's testimony, cannot answer the precise legal question of the nature of a prior conviction. And so that really controls en banc. With regard to the Chok Fong Young case, government has not described it correctly. If you look at the last two paragraphs of that decision, it also addresses relief from removal, not just removal, and says that the Shepard rule applies equally as well. But really, Young v. Holder would be the benchmark, I believe, for the panel. That's what I wanted to know. So what would you describe as your best authority for the proposition that the government is required to present admissible evidence of a State conviction when the alien admits that conviction? Young v. Holder, the Shepard case from the United States Supreme Court, Chok Fong S. Young v. Holder from this Court, and also Cisneros-Perez. All of these are cited in the briefs. Okay. So you also claim that she didn't knowingly and intentionally waive her right to counsel? Yes, Your Honor. I'm pretty sure that that's probably giving the government a hissy fit over the situation in that can we consider her claim that she didn't knowingly and intentionally waive her right to counsel when she didn't raise the issue before the BIA? And how do you get around Sikora v. Holder? It's, I mean, there were some general comments by the immigration judge that might be improper, but then you've got her in a situation where she watches for other people, and they, some of them ask for lawyers. And so it seems to be that you're suggesting that when an I.J. misadvises a Petitioner or maybe kind of under or overstates things, the Petitioner's waiver or counsel is per se not knowing and intelligent. And per se rules always give us pause. Understandably. I think the facts here are important. Again, I don't know that this would be a rule for all seasons. The comments from the I.J. were really pretty extraordinary and suggested to my client that it would basically be impossible for her to get discounted or free counsel and that the judge personally didn't know if it was a good idea to have counsel and that the judges disagree on the value of counsel. So you have really expressed misstatements by the I.J. that discouraged my client. For all she knew, the people who wanted to get counsel had money. My client doesn't have any money. And so with the I.J. having told her with no money you'll never get a lawyer, that was improper. Kagan, this is something that you come up with later. Fair enough that, Your Honor, she's not. And pro bono counsel, for free counsel. I can't fault you for coming up with everything that you come up with, but it, you know, it wasn't something that we're kind of speculating here that. Well, I understand. Trust me, I understand the problem. I think the key here is that my client's notice of appeal should be liberally construed. And she did express in a very imperfect way that she felt she wasn't able to tell her whole story. And that can be construed as saying she needed assistance. She needed assistance of counsel. I mean, any lawyer who was assisting her at this hearing would have advised her about the Shepard ruling, the Shepard rule, for example, and that would have led to a completely different outcome. Right. So why don't you just give us your, you know, since we have to write a mem dispo or we have to write an opinion. All right. Write that for us to give you the relief that you want. Yes, Your Honor. So first, the admission of my client is not evidence of a conviction. There is no evidence of a conviction in this record under Shepard. So then you move to, so that requires a remand at a minimum. And then the panel has to decide to apply Lorenzo now or not. I would urge you to apply Lorenzo and remand with instructions that the claimed statute of conviction does not disqualify my client for relief from removal. Why do we know that when we don't even know what the statute of conviction is? Well, that's what the government asserted. Well, I understand. But I'm saying I can go along with you to the point where you say the admission is not enough because we can't get it to that it's not enough for cancellation of removal. I've got to send it back. I can also get it where the record does not say what the conviction is. So it seems to me at that point we remand to let the government do their duty. And then at that point we decide whether Lorenzo applies or it doesn't apply. And that gives the panel and Lorenzo enough time to think about that. Fair enough. I think that's a very reasonable outcome for this case, Your Honor. I think you could equally as well say that the government, having posited this and having detained my client for three years, shouldn't get a second chance at that. So that with regard to that alleged conviction, the panel can rule on the merits under Lorenzo that it's not disqualifying and also can rule on the merits for an entirely different reason that Martinez-Lopez is distinguishable. Because this statute of alleged conviction here, 11-550A of the California Health and Safety Code, turns on use or possession. And as we have briefed under the Salas case from the California Court of Appeal and another case, proof of a particular controlled substance is not required under that statute. Therefore, unlike Martinez-Lopez, it is impossible to conclude that Section 11-550A creates one crime for each controlled substance. Even the government in its briefing now, I think, implicitly concedes that you can get a conviction as those California cases hold. Kagan. So do you want to save some time for rebuttal? Yes, Your Honor, I will. Thank you. Did you have a question? Okay. Thank you very much. Thank you. Good morning. Good morning, Your Honor. May it please the Court, I'm Lyle Jensen from the Department of Justice, and I represent the Respondent today. I take it the Court wishes to go first in the same order, the Lorenzo issue, and then move down or? Well, I guess in terms of we don't really know. I mean, it's on Lorenzo. What's your position on that? Should we wait for it, or what's the? I think the Court's going to have to wait for it because I don't believe that the other issues have merit. Well, before I get to Lorenzo, then, maybe you better talk to me about what in this record would indicate that Petitioner's statute of conviction is anything. Well, first of all, on page 63 of the record, that's where the IJ asked the prosecutor, the ICE attorney, are there any convictions? The ICE attorney goes through them, and he says, and this is at line 16 of AR-63, yes, Your Honor, we show three. First, he goes to a PC-484. Then he says a June 2013, 2013 conviction for HS11-550A, a user, excuse me, a user under the influence of a controlled substance. So that's where we get that it was a use. I mean, it was said. But what's the third conviction? So the first one's petty theft, 11-550 is under the influence. The third was burglary under PC-459. But the judge never reached the other two convictions. They're not before this Court. In other words, they had no bearing on his decision. The very fact that the counsel gets up and says this, that argument presents no record of anything. And here the petitioner is in there without any counsel, without any way to fight it, says basically, yeah, I had a crystal meth problem, and I'm to find that's enough evidence to say what the statute of conviction is? Well, first of all... That satisfies the government's burden? The government has no burden. The government has no burden? If I may continue, Your Honor. Yeah, you may. When it's removability, the government has a burden to prove the conviction by clear and convincing evidence. I understand. But when it's only relief, as this Court said on Bonken-Young, under 8 CFR 1240.8 and 8 U.S.C. 1229a C4a, the burden is on the petitioner. Now, opposing counsel stated the burden shifted. That is not correct. The way the regulation reads is if the record evidence indicates there's a bar to relief... There is no record evidence. There is no record evidence. There is her admission because the IJS... There's one admission. That's it. That is correct. And it doesn't really say what she admitted to. Only it says is, this government says you have a drug conviction. Is this true? She says it's true. Well, do you know what the drug was? Crystal. Is that the way it was charged in the information under crystal meth? Yes. That's all we got. But it's also in response to the government indicating that she had a 484, an 11-550, and a 459. That is correct. But the judge specifically asked about the drug conviction. She said yes. Now, she could have said, Your Honor, I don't know what you're talking about. She could have said, as when she was asked, Have you received the notice to appear? I don't remember. I don't think so. Here she was very clear. When the ICE counsel stated she had a conviction under 1150A, he just said a controlled It was a she. I apologize. She just said it was an 1150A conviction. Petitioner then said it was crystal meth. He didn't say crystal meth. She said crystal. And then the judge asked her later, crystal meth, and she said yes. The bottom line, though, is that that indicates there's something there. When that indicates, she could have said, I don't know what you're talking about, but under Young and under 1240.8d, the burden shifts to her. Now, we've pointed out a case in the 28J. Marina Lena. I'm sorry, Your Honor? Isn't it Marina Lena? Is that what you said? No, no. I apologize for my tone, Your Honor. No. It was during Galavaz, which is almost on all fours with this, where the petitioner said, I'd like to apply for cancellation of removal. And in his application, no Shepard documents. Just in his application, he admitted a heroin conviction or maybe it was a cocaine conviction. That was found to be enough to indicate, not to prove for removability, but to indicate and when the burden is or when the burden becomes on the plaintiff, on the petitioner, excuse me, when that happens. And that's all we're saying in this case. She had the burden. It's only for cancellation, which, by the way, she never requested. This was just the IJ doing due diligence. She never said she was eligible in any way. I want to understand. Let's assume that she has the burden approval. Why couldn't she meet that burden approval by conclusive absence of any judicially noticeable evidence? You don't have any judicially noticeable evidence, do you? You also have to remember that prior to this case, in that Duran case, this Court said that the admission is enough. There's no reason it's not enough. She could have said, had she simply said, I have no conviction, I don't know, that would have changed everything. But that's not what she did. She admitted the conviction, which is an indication. Sotomayor, so you think that what happened here is sufficient, just her response to the IJ saying crystal, that that's enough? We think it's enough to show that the record evidence indicates a disqualification for cancellation of removal. And that's what the statute and the red require. Indicates, not proof, which we would need. It seems like there's that, I'm sorry, that Young, the Young case, Y-O-N-G. Which was a removal case, Your Honor. Right, but that doesn't apply here. We wouldn't look at that. No. As a matter of fact, in Young, with Y-O-U-N-G, what we found was the evidence was not sufficient to prove a removability conviction. Just not there. It was too unclear. But it was to place the burden on the Petitioner to show he was not eligible for relief. It's two totally separate burdens. And that's what this case is about. And that, of course, is basically what Marina Lorena said, although that case is up on the box. Okay. So even though it's your position that that indicates, at that point it shifts to the Petitioner. So if, let's see, if Lorenzo had not, did not exist, then you would just be saying, okay, we're home free. Here. But now let's assume that you're saying, what I understand you to say is that when she there, she was told what was in her, what was on her rap sheet, and she said that she did have this crystal conviction, which the 11-550 is the only drug conviction of the three, and then it's clarified it's crystal meth. At that point, there's an indication that she is not eligible for cancellation of removal. So then it would be, it shifts to her. But now, if Lorenzo becomes the law, then that would be a basis for, even though she admitted it, that possibly the 11-550 would not be a qualifying, it would not, it wouldn't pre-dermit her. Right? Clearly, if Lorenzo is the law, we have to agree to that, Your Honor. So you would, your position is, okay, we're, for purposes of, I mean, obviously the petitioner is arguing that there were no Shepard documents, that it's not sufficient at that point. You argue that it indicated, then it shifted to her, so that's not a problem. I understand your argument to be that based on the totality of the circumstances and the fact that she didn't previously challenge her waiver, that there was a point to establish a per se rule on knowing and intelligent, you're opposing that. But you are conceding that it should, we should wait for Lorenzo to see whether her admission, if she admitted something that isn't pre-dermitting, then she would get to, she could be considered for cancellation. That doesn't mean it's discretionary relief. She might not get it. Well, I do need to clarify on Lorenzo. Okay. The government believes that, and we submitted a brief to the court, that that issue was waived. Well, I understand, but that's the question I was about to ask you, because I thought you started out saying we've got to wait for Lorenzo. We should, unless... I mean, the bottom line is, it's either waived or it isn't. It is waived. It seems to me you're suggesting it's waived and so Lorenzo doesn't make any difference whatsoever. Why would I wait if it's waived? If it's waived, then the Lorenzo issue goes away. All right. That is correct. And why would you say it's waived? Didn't really the Petitioner question the issue of divisibility here? Of divisibility in the Martinez fashion. Well, I understand, but just a minute, just a minute. Let's stop. The Petitioner questioned the divisibility issue, suggesting that it wasn't divisible rather than it is divisible. Now, if I go to Lorenzo, they say it's divisible, but guess what? We've got enough documents in there to suggest that, even though there's a meth conviction, it may not be the same meth conviction. So all I'm saying is how is it waived when he is just questioning divisibility, which is the same issue? I may have misunderstood, Your Honor, but there were no documents at all submitted in Lorenzo. What? There just weren't any. I understand that, but we're still trying to decide the ultimate. But as Lorenzo itself said, there are two divisibility issues. There's the one on Martinez. That is, the statute itself is overbroad based on the schedules versus the CSA. Right. Then there is the one that Lorenzo's counsel brought up specifically. We charged it was waived. The court said no, and they quoted from the record and said, he's actually saying two different isomers. Well, I guess my worry is that I don't find my court, if we get to the divisibility issue and any issue thereafter, it seems to me that other cases in my court would say that's enough to give the petitioner full advantage, not just call it waived because he's only focusing on divisibility and not the effect of the after divisibility, what that's going to do, but that the whole issue is the same. My guess from this is that waiver will not be found. Well, no, I'm just trying to, I mean, if I made your argument, I believe you, me, I've made your argument a couple of times in trying to get to the result I want to get to here, knowing what to do. I'm trying to figure out really whether there's a waiver or there isn't, and I'm trying to get your best argument. The best argument we've given you, he raised the visibility as a totally separate point. He could have raised it as to the isomers, as did Lorenzo's counsel. He did not. We therefore consider it's waived. However, in the event it is not waived, then the court has a very interesting situation here because not knowing what Lorenzo was going to decide, not being able to read tea leaves. In Lorenzo, no evidence was put in by either side. Now in its petition for panel re-hearing, the government has asked the court to take judicial notice of two petitions in a different manner than Lorenzo does. In fact, they say one of the isomers that California charges or considers is non-existent. Now the petitioner has opposed the taking of judicial notice. That's already come in. I don't know what will happen. We do know that in United States v. Hernandez, which was also a possession of methamphetamine, the government put in, asked for judicial notice of the same two petitions, two declarations. Excuse me, Your Honor. And the court granted that. Because there is no evidence in this case, one way or the other, we only have her admission, which again we say was enough to indicate, and therefore she is the burden. Sotomayor, I'm going to come back because I've just been looking at Yong, Y-O-N-G.  I'm not sure what I'm seeing or what I see of it, because it seems like Yong, it says admission of conviction during removal, proceedings, and unidentified conviction document alone is insufficient under the modified catechol approach to render petitioner ineligible for cancellation of removal. That has been overtaken, though, by events, both by Yong and after Yong. And remember, Yong never cited 1240.8d. But you agree that's what Y-O-N-G says, correct? Yes. And then you say that it's been overtaken by Yong, Y-O-U-N-G. Okay. And we would submit that Duenas is now, which cites Yong and 1240.8d. And of course, Yong, Y-O-N-G, could not do that because Yong wasn't out yet, although it could have cited 1240.8d, which it didn't. In light of those two cases, Duenas has the better argument. Well, if she goes, go ahead, go ahead. Are you through, Judge? Well, so you're saying, I'm just trying to figure out the path here, especially since she's in custody. I mean, and we have our case law right now, where Lorenzo says, we have to accept Lorenzo right now unless we decide to wait. I'm trying to weigh why we would wait if she's in custody and let this play out before the BIA and what would happen there. And I guess it seems they would sort out this whole burden of proof, which I think is going to be very messy. And even more so because I think Y-O-N-G, Yong, is still good law, and Yong, Y-O-U-N-G, has been called into question in light of Mari Nalena, a case that we've taken en banc, I believe. And so I'm not quite sure why we wouldn't let this case proceed while all of that gets sorted out. And then even, you know, so that way she's not waiting. And then, you know, we come up with something that, you know, supports her or not that can be taken up at that point in time. I think your answer to that is, but I'm curious, is your answer to that that it would assign a burden of proof to the government that you don't accept? That is, yes. Yeah, but that would get sorted out on who has the burden of proof down there. The burden of proof is by Congress. Congress has specified the burden of proof. No, I know, but you say it's her burden of proof. Let's say it's her burden of proof. I think it seems like based on what we have here, and if Y-O-N-G is still good law, she's willing to take that. I don't understand why she wouldn't be willing to take that risk. So I apologize. No, that's all right. So why wouldn't we let that play out? Y-O-N-G depended upon documents. That was the issue there. We didn't have the issue of an admission the way we have here. It's different. As to, by the way, the detention, that's a totally separate issue. That's a habeas. That's not before this Court. And we can't. Well, I fully understand it's not before the Court. But it was asked by one of my colleagues here whether or it came out that she was in detention. But we would say that that's not a fair reason to delay this case any further because she has a different ground to get there, and they have not raised it. If she wants out of detention, she's got to go through a habeas. And that's how she would address that. Well, can you – I do have a question about that. Okay. If you're in detention over this, can you just say, okay, just send me home? Yes. Or she could always do that. So when you're in detention like this, what's it like? I mean, it's – I mean, when they're in detention, is it like being in jail, or is – what sort of facility is she in? I think I'd have to say it's like being in jail. I don't think that's what the government would want me to say. But detention is very similar. I mean, I don't know the confinement facility. No, but I mean, it's not like you're living at a house and you're wandering around out on a ranch or something like that. No, you're right. She's in a confinement detention facility. She does not have freedom to go out. So if she said – if she went back there today and said, okay, you know, I just don't want to pursue this anymore. I'm going to drop it, can she get out and get deported? To Mexico? Yes. She can be removed to Mexico almost immediately, yes. So – but as long as she pursues the case, then she's in detention. Or she – bond has been granted. It's apparently more than she can afford. Okay. Or she can, as I say, go to habeas, try to get the bond reduced. Now, I apologize. So I'm assuming, you know, sometimes we ask people about mediation or, you know, that type of thing. There are issues where the government and counsel reach – they look at it and say, well, I think that you would get cancellation, but like if you say, okay, if Lorenzo sticks, then maybe that's not going to count. But like I guess you said, the burglary had not been adjudicated as far as that goes. I don't know. But is there anything here that you – that the government thinks like, okay, she can stay? In this country? Yeah. No, Your Honor. And cancellation is very difficult to get. One, she didn't request it. But two, there's the good moral character, which with three convictions, that's going to be tough. There's also the hardship issue. She's got to show extraordinary or extreme hardship. I believe – I believe it was you, Judge Smith, who said she's been in detention for three years. Her kids are doing – I said that. I apologize. She's not going to be able to show, or at least it doesn't appear that she'll be able to show the hardship. Remember, in all the time that she's been there, she hasn't submitted any documentation asking for cancellation. When she went before the board, she said, I have a U visa or I want a U visa. She never asked for cancellation. To this date, she never moved to reopen to see if she could get cancellation. She's taken no steps for that. We have no evidence whatsoever aside from these convictions. So from the government's perspective, mediation doesn't make any sense to you? No, I don't believe it would be effective, Your Honor. You're being candid with the court. Supposing – and this is my – when I walked in here, I thought about this, and I'm just giving it as an example, and I want your telling me why I'm wrong. I frankly am not – I am not convinced that this record is sufficient for me to suggest that her statute of conviction is 115550A. I think there's enough in there to say what she admitted to, and I think there's enough in there to say that when she admitted to it, that there is an admission. And so therefore, I'm worried about on a cancellation of removal, whether that's of any importance. But what case says that I – what level of proof that I had to have here to make sure that we can get to this particular point on – when I don't even know for sure what the record of statute of conviction is? A few points on that, Your Honor. That's why I asked. If she's lucky, it is 1150A, because that's the legal – 11550. 11558. If you're a street California lawyer, it's 11550, having been a – Well, I'm not a street lawyer, but I – okay, I got 11550, because I've got a street lawyer right next to me. Go ahead. Otherwise, we're talking something a little bit higher. I understand. And this is the least of the offenses that she could have been. One way or the other, whether it was use, and that's what she admitted to, that's what the IJ asked her about, or it was worse, she said crystal meth. That is the key here. She's got some sort of a crystal meth conviction. Again, if you're asked a question, do you have a conviction on crystal meth, and you have no idea what they're talking about, or a controlled substance conviction, you don't say, yes, Your Honor, crystal meth. You answer, I don't know what you're talking about. No, I don't have any kind of such conviction. Well, you're just arguing your side of the issue. I'm suggesting, what is the case that you would recite me to that would suggest there's enough evidence here that we have a record of conviction in the record on which to base this judgment? Our best case is Duran-Galavis. Duran is your best? Yes. And that is an unpublished case, being very candid with the court. Well, I mean, that's why I was about to tell you. No, I understand it's unpublished. That's unpublished. How could I get there? Well, it's still persuasive. It still cites young. Now, and maybe. I mean, isn't it easier for me to send it back and make sure that we've got what we've got? Because if we know for sure what the record of conviction is, and we know for sure that she's admitted to it or she hasn't admitted to it, when you get up here again, it'll be a lot easier for me to apply the issues that are in front of me and include know what to do with Lorenzo because it might be done. If you do send it back, I would caution the court that Petitioner said, oh, collateral estoppel, you can never consider the drug conviction again. We would very much oppose that. If it gets sent back, then the government has to be able, especially in light of Petitioner. How can it be that way if Petitioner is up here asking me to send it back for that very reason? I can only point you to his brief where he said collateral estoppel and said the government does not have the ability to reprove its case. Well, why don't you, why don't you, let's, just because we don't sit as immigration judges. All right, so the immigration judges in these situations, and I'm just, stop me where I'm wrong. I'm understanding they have a whole bunch of people that come in. They go over what the allegations are. The government lawyer is sitting there, and then if they say, well, and they have a rap sheet on the person. Is there anything, if it's so for cancellation or removal, is there anything that would pretermit them from going any further? And they advise them of counsel and all of that. So this would, there's a lot of people there at this particular stage, right? There were three, yes, Your Honor. Well, but, I mean, this is not, it's not a prove-up hearing, per se, of what the procedure that we're talking about here, is it? Yes, it is. There was a master calendar hearing with, I think it started with four different individuals, but one was unable to proceed with the Spanish interpreter. So there were three that were left. But would the government regularly have, you have a rap sheet, but at these hearings, when you're determining whether someone can go forward with a particular, you know, whether it's going to go forward. Now, you said, if she said, I've never heard anything about that, then it wouldn't have been pretermitted at that point. It would have been put over for a hearing or whatever. Does the government come to this type of hearing other than with a rap sheet and all that? Because my recollection of, you know, records of conviction, you have to order those, you have to get certified copies, you have to send those, and that's a kind of initial arraignment or calendar, whatever this is. What happened was this shifted from a master calendar to a merits hearing when she said she wanted to go forward. And, of course, Your Honor is correct that the government did not have, since she had not requested anything, the government did not have the conviction documents, at least that's what the record seems to indicate. They had a rap sheet. A rap sheet. Thank you, Your Honor. And the judge simply asked, look, I'm going to go through everything. I'm going to go through, has anyone put you in for a visa? Are you afraid to go back? Then he said, are there any convictions? The counsel said, I don't have an A file, but I have three convictions. And the judge said, well, that would mean that you wouldn't be eligible for cancellation after she admitted the conviction. And that, by the way, was not hearsay. That was an admission. Once she did that, the government never went back to get the documents because she admitted to the conviction. Had she said no, the judge would have said, government, what documents do you have? Then we would have been in a situation where the government had to go forward and get the documents. Why? Because it would no longer have indicated. Once she said no, then the government would have the burden to prove the conviction. But the judge said no. Okay. So if we don't accept your version of this, then the government would always have to come to hearings with documents ordered and be ready to present them at that stage and not wait to do the sort of the prima facie indication. You have a rap sheet. That's what. But then if you go on, if they contest it, then you order them. That is correct. But had she said I want an attorney from the start, things would have been — she would not have gone to hearing that date. Things would have been carried over. The government, in all likelihood, would have waited to see because, remember, she's not charged with removability based on this conviction. She's charged — I know we're going way over. But then, okay, so if they're asking for a remand, then does that necessarily — what your concern on that is that it would necessarily include a finding that you failed to meet your indication burden, you failed to shift the burden, and therefore it would stand for the proposition that every time the government's there, that you always have to have all of those documents ready? It would be very difficult, Your Honor, yes. Not only that, but res judicata. Yes. Because you failed to present the evidence at the time. Which is a problem. And that was sort of the collateral estoppel res judicata argument that's being made? I assume so. Okay. All right. I know that's — I know a lot of this is background, but — It looks like at ER-64, the I.J. referred to that mystery document as an information. Is that what you understand? I mean, there's some reference that it might be a rap sheet. Well, it was counsel that referred to it. It's an information. It's a charging document. Yes. What it was was the government did not have the conviction documents with her. I mean, you know, she was not expecting to go forward at that time. And, again, this was not a situation where the Petitioner asked for cancellation. She has never asked for cancellation. That has never been before the BIA or the I.J. The I.J. simply said, if you do have a conviction, and do you have this conviction, then you're not going to be eligible for cancellation. That was the entire state of the record. Okay. Okay. So, if we don't agree with you that she waived Lorenzo, let's say, but we — then your position is hold off and wait for Lorenzo? Yes. And if Lorenzo goes — Her way. Her way, then this case goes back in our opinion, and we would be allowed to do what the government failed to do in Lorenzo. That is to say, make the case before the BIA. Get an agency decision. The two declarations that I cited before or stated before, we would have the chance to produce that to the BIA. The Petitioner would have the chance for it to prove whatever evidence she has, that there are these two isomers, that it's not divisible. In fact, Petitioner would also have the chance if she wanted to, again, try to contest Martinez. But if Lorenzo stays as it is, then it goes back. If Lorenzo — if you succeed in Lorenzo, then we have to look at what Lorenzo says and go from there. Yes. Then the methamphetamine conviction will suffice. Then the only real issue is the admission that we've been arguing about here or dialoguing about here back and forth. Will that be sufficient to indicate that she's not eligible for release? Cancellation. For cancellation. Yes, Your Honor. Okay. Any? All right. Okay. We'll go back to the other side. Thank you, Your Honor. All right. If we need more time with you, we'll take more time with you, too. We're just really, I think, trying to understand all the implications of what all of you are asking us. I appreciate that. And maybe you want to — if you're making an argument for, well, just go ahead and remand it and just give her a chance and that's a good idea. I think the government has raised that implicit in that it would be an alteration of what they say would be the burden of proof and that you're arguing for collateral estoppel or res judicata and then you're going to say, you know, alley, alley, ox and fray. Which your brief seems to indicate as well. Yes, Your Honor. We did make — I mean, really, they're separate arguments. So the first is — Well, they're not, really. If you're arguing to send it back, you're really saying I get an argument for res judicata. Regardless of all this other stuff about what the government has to do or doesn't do. Let's stay to this case. If you're really arguing for this to go back, you're saying they didn't meet the burden in the first place, they had a burden in that hearing and, therefore, they don't get to meet the burden and my client is out. That's your argument. Yes, it is. And — And if I won't go for that argument, then I can't send it back. Well, I will — Modify a secondary position. I will withdraw that argument if that's — if the Court concludes it can't remand because of a concern about the collateral assault argument. Well, I don't know. I mean, you're a good lawyer, and that's why we were glad to appoint you for this position. And your argument was pretty specific about this. That's why I was pushing you a little bit, and you didn't quite get there. That's why I pushed the lawyer for the government. Now it seems to me obvious. If I'm going to remand, I'm going to have a res judicata problem.  And I think it's right, and I think it's — particularly because the client has been in detention for so long. Well, I understand. But that shouldn't be a barrier to her getting a hearing on the merits. So if you're not convinced by that and that would prevent you from remanding it, then I will withdraw that argument right here and now, and we will not assert that on remand. So that if she can get a hearing on the merits — You will take any wedge in the door. Pardon me? You will take any toe that you can get in the door to have a chance. Not if I — I mean, no. I mean, you're going for everything, but if you don't get everything, you would — Exactly, Your Honor. You would take less. Yes. Thank you. If it were less, which would be more than denying the petition. That's correct. Correct. So please don't let that stand in your way. And I'll represent to you now that we will consider that argument abandoned if it's necessary to obtain a remand. The red light is flashing. May I say just one other thing quickly? Sure. We've been — I think the issues have been — All of my strict rules have gone out the window today. It's chaos. The issues have been well vetted. I just want to respond to this concept of the government being burdened by having to produce the documents at this hearing. I think that's not a fair point, to be candid. The requirement to produce these documents has existed for years. The IJ, the BIA, the Government Council, they all know this, or if they don't know it, they should know it. Well, except what you want is they have to request them on everyone, regardless of the resolution. And I know, having sat in a courtroom in terms of when you come the first time and then if you go over in terms of — it isn't that easy to request things, and then people have to respond, and then good lawyers like you go, gotcha. And so it's — there is a reason that it — you can't have all of them ready to go in every single file. I don't think that that is realistic. Agreed. But not then and there at that hearing. It could have been continued to say, okay, now we have reason to think there is a conviction, so let's get the conviction documents and confirm it. I mean, the courts have said over and over, the stakes are really high in deportation cases, and so they should get it right. And there is no expediency exception to the Shepard rule from — that emanates from Supreme Court decisions. Okay. Thank you. Thank you both for your argument in this matter. It was very helpful, and you're both very well prepared. This matter will stand submitted, and court is in recess until tomorrow. Oh, wait. I think I had one other case on the — oh, yeah. Okay. So this matter is submitted. Then the last matter, June Amelini v. U.S. — United States IRS 17-17212. We've submitted that matter on the brief. So this course is now in recess until tomorrow at 9 a.m. Thank you.
judges: Callahan, N.R. Smith, Murguia